## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RUSSELL LEE TRYON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-14-1140-STE |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative development.

I.    **PROCEDURAL BACKGROUND**

Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 25-39). The

Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 27, 2011, the alleged disability onset date. (TR. 27). At step two, the ALJ determined that Plaintiff had severe impairments of degenerative disc disease, depression, reflex sympathetic dystrophy syndrome (RSD), obesity, status post right ankle injury, status post right shoulder surgery, and headaches. (TR. 27). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 28).

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (TR. 37). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [L]ift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally reach overhead with his right upper extremity. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but have occasional contact with the general public.

(TR. 30).

Based on the finding that Mr. Tryon could not perform his past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC to a vocational expert (VE) to determine whether there were other jobs Plaintiff could perform. (TR. 104). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT) which Plaintiff could perform. (TR. 104-05). The ALJ adopted the testimony of the VE and concluded that Mr. Tryon was not disabled based on his ability to perform the identified jobs. (TR. 37-38).

### III. ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) error in the evaluation of a treating physician's opinion, which affected the validity of the RFC, and (2) an improper evaluation of "other source" evidence.

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V.     ERROR IN THE EVALUATION OF DR. WINCHESTER'S OPINION

Plaintiff alleges that the ALJ erred in his evaluation of an opinion from treating physician, Dr. Mark Winchester. Specifically, Mr. Tryon claims that the sole reason the ALJ provided for according the opinion "little weight" was insufficient and based on a mischaracterization of the evidence. (ECF No. 14:14-16). Mr. Tryon is correct.

### A.     ALJ's Duty in Evaluating a Treating Physician's Opinion

Initially, an ALJ must determine whether a treating physician's opinion is entitled to "controlling weight." *Krausner v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). This deference must be given if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in the case record." *Id.*; Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) (SSR 96-2p).

If the ALJ declines to give the treating physician's opinion "controlling weight," the ALJ must examine particular factors and explain the amount of weight assigned. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue*, 638 F.3d at 1330, 20 C.F.R §§ 404.1527, 416.927.

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p 1996 WL 374188, Westlaw op. at 5. If the ALJ rejects the opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). An ALJ may reject a physician's opinion outright only on the basis of contradictory medical evidence and not due to his own credibility judgment, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

### B. Dr. Winchester's Opinions

Records establish that Dr. Winchester treated Mr. Tryon from February 2011 through May 2012. (TR. 393-405, 467-69, 569-71). In February 2011, Mr. Tryon complained of back and joint pain and Dr. Winchester referred Plaintiff for an MRI of his lumbar spine (TR. 404-05). The MRI showed a disc bulge with central disc protrusion and annular tear at L5-S1. (TR. 407). In March 2011, Plaintiff reported being in extreme pain with muscle spasm and stated that he felt like he had "charlie horses in [his] low back" and that he could not sit still for long. (TR. 403). At that time, Dr. Winchester diagnosed acute lumbar strain and referred Mr. Tryon to a neurologist and prescribed a back brace. (TR. 402). In late March 2011, Mr. Tryon reported increased and worsening pain in his back. (TR. 401). Two weeks later, Dr. Winchester diagnosed muscle spasms in Plaintiff's lumbar region. (TR. 398).

In May 2011, Mr. Tryon reported that he fell and hurt his upper and lower back, as well as his neck and shoulder. (TR. 397). Dr. Winchester diagnosed acute lumbar contusion, prescribed pain medication, and ordered a second MRI of Plaintiff's lumbar

spine. (TR. 396). The second MRI showed a disc bulge with central annular tear at L4-L5 had developed since the previous MRI and the bulge at L5-S1 had slightly progressed. (TR. 406). In June 2011, December 2011, and May 2012, Dr. Winchester diagnosed a ruptured disc, prescribed pain medication, and referred Plaintiff to a neurosurgeon. (TR. 394, 467, 570).

In May 2012, Dr. Winchester authored a detailed "Physical Residual Functional Capacity Opinion" which outlined Plaintiff's complaints, as well as Dr. Winchester's diagnoses and opinions regarding Mr. Tryon's specific work-related abilities. (TR. 552-55). There, Dr. Winchester stated that Plaintiff had severe back pain which increased with any activity and was "unrelieved by any position." (TR. 552). The physician noted decreased range of motion in Plaintiff's lumbar, dysarthric gait, and diagnosed lumbar disc ruptures at L4-L5 and L5-S1. (TR. 552). Dr. Winchester noted that the Plaintiff was not a malingerer and his symptoms were severe enough to frequently interfere with his attention and concentration. (TR. 552-53).

Regarding functional work-related limitations, Dr. Winchester opined that Plaintiff could: (1) walk less than 200 feet before needing rest, (2) continuously sit for 15 minutes before breaking, (3) continuously stand for 5 minutes before breaking, and (4) sit, stand, or walk for less than 2 hours in an 8-hour workday. (TR. 553).

The doctor also stated that Plaintiff would need to: (1) take breaks every 10 minutes to walk for 2 minutes, (2) shift positions from sitting to standing to walking, (3) take unscheduled breaks, perhaps hourly, to rest for 15-20 minutes, and (4) elevate his legs horizontally for at least 50% of the workday. (TR. 553-54). According to Dr. Winchester, Mr. Tryon could never lift or carry even 10 pounds, could only handle, reach,

or finger 1% of the time, and had no ability to bend or twist. (TR. 554). Finally, the physician opined that due to his limitations, Plaintiff would likely be absent from work more than three times per month. (TR. 555).

### C. The ALJ Erred in his Evaluation of Dr. Winchester's Physical RFC Findings

According to Plaintiff, the ALJ committed legal error in his evaluation of Dr. Winchester's opinion, which also undermined the RFC. Mr. Tryon is correct.

In his discussion, the ALJ recited all of Dr. Winchester's findings which he had set forth in the Physical RFC Opinion. (TR. 36). The ALJ then stated:

> The Administrative Law Judge provides this opinion little weight as it is inconsistent with the claimant's reported activities of daily living. The claimant reported that he drives, shops, prepares some meals, and watches television. The claimant testified that he drove to the grocery store the weekend before the hearing. He reported that he can do personal hygiene, takes a shower, can make sandwiches, can do some household chores, and change beds.

(TR. 36-37).

Although the ALJ stated that he gave Dr. Winchester's opinion "little weight," the ALJ actually rejected Dr. Winchester's opinions with regards to Mr. Tryon's abilities to lift, carry, sit, stand, walk, reach, bend and twist, as well as Plaintiff's need to elevate his feet for 50% of the day, and take multiple breaks. *Compare* TR. 30 *to* TR. 552-55. And the ALJ never mentioned Dr. Winchester's opinion that Plaintiff's pain would frequently interfere with his attention and concentration. But a potential conflict exists with that opinion and the ALJ's finding that Mr. Tryon could understand, remember, and carry out simple, routine, and repetitive tasks.

As stated, an ALJ may only reject a treating physician's opinion on the basis of contradictory medical evidence. *McGoffin v. Barnhart*, 288 F. 3d at 1252. And if the ALJ does reject the opinion, he must provide "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d at 1300 (internal citations omitted). The ALJ here violated these principles in two ways.

First, the ALJ erroneously relied on Plaintiff's daily activities as his sole basis for rejecting Dr. Winchester's opinions. A claimant's daily activities should be considered when evaluating whether allegations of pain are credible. *See Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). But the ALJ's reliance on an "inconsisten[cy] with the claimant's reported activities of daily living" is an insufficient basis on which to reject a treating physician's opinions. *See McGoffin v. Barnhart*, 288 F.3d at 1252 (noting that an ALJ may not reject a treating physician's opinion based on his credibility opinion, as such judgment alone does not "override the medical opinion of a treating physician that is supported by the record.") (internal quotation marks and citation omitted); *Santiago v. Colvin*, 2014 WL 896618, Westlaw op. at 5 (Mar. 6, 2014) (unpublished op.) (ALJ's rejection of treating physician's opinion based on the plaintiff's ability to drive, do household chores, go for walks, and work on his computer was legally insufficient).

Second, the ALJ failed to explain exactly how Mr. Tryon's activities of daily living were inconsistent with Dr. Winchester's opinions. *See Walden v. Astrue*, 2012 WL 3733305, Westlaw op. at 5 (Aug. 28, 2012) (unpublished op.) (stating that "the ALJ has failed to explain how plaintiff's activities of daily living, as the ALJ set forth in his opinion, are inconsistent with the opinions of [two treating physicians].") In fact, Plaintiff's testimony supports Dr. Winchester's opinions. *See* TR. 86-87 (testimony that

8

Mr. Tryon could not lift 10 pounds or work for two hours continuously, even with a sit-stand accommodation, and needed to lie down 2-4 hours every day).

The lack of contradictory medical evidence and proper explanation invalidate the ALJ's sole rationale for rejecting Dr. Winchester's opinions. The ALJ's legal error necessarily impacted the RFC determination. Thus, the Court remands the decision for reconsideration of Dr. Winchester's opinion and consideration of its impact on the RFC.

## VI. ERROR IN THE CONSIDERATION OF "OTHER SOURCE" EVIDENCE

Plaintiff alleges error in the evaluation of an opinion from his case manager at Red Rock Behavioral Health Services, Kimberly Sawyer. Mr. Tryon's allegations have merit.

### A. ALJ's Duty to Consider Evidence from "Other Sources"

Tenth Circuit law and Social Security Ruling 06-3p state that the ALJ must consider evidence from "other sources," who do not qualify as "acceptable medical sources." *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006); Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, Westlaw op. at 4, 6 (SSR 06-3p). Opinions from these "non-medical sources" who have seen the claimant in an official capacity should be evaluated using the following factors: (1) the length and frequency of the treatment, (2) consistency of the opinion with other evidence, (3) the degree to which the source presents relevant evidence in support, (4) how well the source explains the opinion, (5) the level of the source's expertise, and (6) any other relevant factors. SSR 06-3p, 2006 WL 2329939, Westlaw op. at 5. In evaluating "other

source" evidence, the ALJ should explain the weight given to the "other source," or otherwise ensure that the decision allows a reviewing party to follow the adjudicator's reasoning. *Id.*

### B. Error in the Consideration of a Statement from Mr. Tryon's Case Manager

Following 8 months of treatment at Red Rock Behavioral Health Services (Red Rock), Plaintiff's case manager, Ms. Sawyer, completed a Mental Impairment Questionnaire which documented Mr. Tryon's mental work-related abilities and limitations. (TR. 562-68). In the decision, the ALJ recited Ms. Sawyer's findings and stated that he gave the opinion "little weight," stating three reasons. Two of the reasons are invalid and the ALJ's lack of explanation constitutes legal error.

First, the ALJ stated that Ms. Sawyer was not considered an "acceptable medical source." (TR. 35). The ALJ was entitled to consider Ms. Sawyer's level of expertise in his analysis. Even so, that factor alone did not excuse the ALJ's duty to evaluate Ms. Sawyer's opinion. As explained by the Tenth Circuit Court of Appeals, opinions from individuals who are not "technically acceptable medical sources" are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (internal citation omitted); *see* SSR-06-3p, 2006 WL 2329939, Westlaw op. at 2 (stating that information from other sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.").

Second, the ALJ stated that Ms. Sawyer's opinion would be "provided consideration to extent [sic] the records are consistent." (TR. 35). The ALJ then cited one record from Red Rock which he apparently believed was "inconsistent" with Ms. Sawyer's opinions. The evidence is a small portion of the "Initial Psychiatric Evaluation" completed the day Mr. Tryon began treatment at Red Rock. As noted by the ALJ, the record states that Plaintiff's affect was "normal," he had "average" judgment, and he was not experiencing delusions or hallucinations. (TR. 491). The ALJ relies on these findings as a basis to reject Ms. Sawyer's specific mental functional work-related limitations. (TR. 35).

The ALJ's selective review of the evidence ignores notes throughout Plaintiff's 8-month course of treatment at Red Rock which showed depressed affect, a diagnosis of severe, major depression, and severe difficulties in social relations. (TR. 486, 500, 600, 601). The ALJ's review of the record rendered his reliance on the evidence legally deficient. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects.").

In addition to the selective review, the ALJ failed to explain why he rejected portions of Ms. Sawyer's opinions which directly conflicted with the RFC determination. For example, Ms. Sawyer stated that Plaintiff had a poor or no ability to: remember work-like procedures, maintain attention for two hour segments, maintain regular attendance and be punctual, sustain a primary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, complete a

11

normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept assistance or respond appropriately to criticism from supervisors, respond appropriately to changes in routine work setting, deal with normal work stress, interact appropriately with the general public, and maintain socially appropriate behavior. (TR. 565-66).

In support of her findings, Ms. Sawyer wrote: "Client has been diagnosed with "Major Depression DO, severe w/o Psychotic; General Anxiety Disorder, & PTSD. Client does not function well around other people." Ms. Sawyer also found that Plaintiff was unable to focus and concentrate on tasks; that he cannot handle stress in an appropriate manner; and that he cannot tolerate being around a lot of people, nor can he tolerate traveling long distances. (TR. 566-67). The ALJ mentioned Ms. Sawyer's findings, but did not include them in the RFC or explain why he had failed to do so. The lack of explanation constitutes legal error. *See* SSR 06-3p, 2006 WL 2329939, Westlaw op. at 5.

Finally, the ALJ discounted Ms. Sawyer's opinion based on Plaintiff's ability to drive, shop, watch television, and care for himself. (TR. 35). As discussed, while these factors may be considered in determining Plaintiff's credibility, they are not appropriate in an evaluation of opinion evidence concerning Mr. Tryon's specific mental work-related limitations.

In considering "other source" evidence, the ALJ must consider the evidence, explain the weight given, and provide an adequate rationale which allows a reviewing party to follow the adjudicator's reasoning. The ALJ erred in this regard- -he failed to

explain his rejection of the majority of Ms. Sawyer's opinions and the Court is unable to reconcile his treatment of the opinion based on his selective review of the evidence. Due to the legal error, remand is appropriate for further consideration of Ms. Sawyer's opinion in accordance with the appropriate legal guidelines.

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative development.

**ENTERED** on January 28, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE